# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| RANDY KIRKMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:19CV555 |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Randy Kirkman, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entries 8, 9 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 12, 15; see also Docket Entry 13 (Plaintiff's Memorandum); Docket Entry 16 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI, alleging a disability onset date of September 30, 2015. (Tr. 205-11.)[1] Upon denial of those

---

[1] Plaintiff's application for DIB does not appear in the record.

applications initially (Tr. 56-83, 106-10) and on reconsideration (Tr. 84-103, 116-33), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 134-35). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 28-55.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 10-22.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 198-204, 333-40), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2021.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since September 30, 2015, the alleged onset date.
>
> . . .
>
> 3. [Plaintiff] has the following severe impairments: history of throat cancer in remission; depression; anxiety.
>
> . . .
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .
>
> 5. . . . [Plaintiff] has the residual functional capacity to perform a range of light work . . . except [he] cannot climb ladders, ropes, or scaffolds; must avoid concentrated exposure to irritants such as fumes,

2

odors, dusts, gases, and poorly ventilated areas; must avoid concentrated exposure to hazardous machinery, unprotected heights, and open flames; is limited to jobs that do not require frequent verbal communication; can do simple, routine, repetitive tasks; can work in a low stress job, defined as being free of fast paced production requirements, no hazardous conditions, only occasional decision making required, and only occasional changes in the work setting; can occasionally interact with coworkers, supervisors, and the general public.

. . .

6. [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [he] can perform.

. . .

11. [Plaintiff] has not been under a disability, as defined in the . . . Act, from September 30, 2015, through the date of this decision.

(Tr. 15-22 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

3

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the

4

[Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a

---

[2] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. [SSI] provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment,

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

7

### B. Assignment of Error

In Plaintiff's first and only assignment of error, he asserts that "[t]he ALJ erred by failing to account for Plaintiff's limitations in [concentration, persistence, or pace ('CPP')] in the RFC assessment." (Docket Entry 13 at 4 (bold font and single-spacing omitted).) In particular, Plaintiff maintains that, despite finding that Plaintiff's mental impairments caused moderate limitation in CPP (id. (citing Tr. 17)), the ALJ "included a social limitation to occasional contact with others . . . and placed limitations on stress tolerance and pace" in the RFC, but did not include any restrictions "to address [Plaintiff]'s admitted limitations in concentration and persistence" (id. at 5 (citing Tr. 18)). Plaintiff points out that the United States Court of Appeals for the Fourth Circuit has held that "'an ALJ does not account for a claimant's limitations in [CPP] by restricting the hypothetical question to simple, routine tasks or unskilled work,'" that "'the ability to perform simple tasks differs from the ability to stay on task,'" and that "[o]nly the latter limitation would account for a claimant's limitation in [CPP].'" (Id. (quoting Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015) (internal quotation marks omitted)).) Plaintiff further notes that the ALJ acknowledged Plaintiff's "ongoing issues with fatigue and pain since his radiation treatment and h[is] difficulty completing tasks due to fatigue interfering with his ability to concentrate and stay

8

focused," but that "[t]he ALJ did not explain why he did not incorporate work-related limitations for CPP into the RFC." (Id. (citing Tr. 18, 19).) According to Plaintiff, the ALJ's "error was particularly harmful given that . . . [t]he VE testified that even if [Plaintiff] were off task only five percent of the day outside of the typical, regularly scheduled breaks, then he would be unemployable in a competitive unskilled setting." (Id. at 6 (citing Tr. 53).) Those contentions fail to warrant relief.

The Fourth Circuit has indeed held that "the ability to perform simple tasks differs from the ability to stay on task," and that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]," Mascio, 780 F.3d at 638. However, as a neighboring district court has explained:

> Mascio does not broadly dictate that a claimant's moderate impairment in [CPP] always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision . . . . An ALJ may account for a claimant's limitation with [CPP] by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Jones v. Colvin, No. 7:14CV273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015) (magistrate judge's recommendation adopted by district judge) (unpublished) (emphasis added). Here, the ALJ's decision provides a sufficient explanation as to why the RFC's restrictions to simple, routine, and repetitive tasks ("SRRTs"), as

9

well as to a low stress job (which the ALJ defined as precluding "fast paced production requirements" and "hazardous conditions," and as involving "only occasional decision making," "only occasional changes in the work setting," and "occasional[] interact[ion] with coworkers, supervisors, and the general public") (Tr. 18) adequately accounted for Plaintiff's moderate deficit in CPP.

First, the ALJ recognized Plaintiff's subjective complaints that "he has difficulty completing tasks due to fatigue," and that "[h]e has difficulty concentrating and focusing" (Tr. 18; see also Tr. 34, 48-49), but found that his "statements concerning the intensity, persistence and limiting effects of th[o]se symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e] decision" (Tr. 19). In support of that finding, the ALJ noted that Plaintiff "ha[d] minimal mental health treatment" and that his mental health providers rated Plaintiff's depression "as moderate." (Tr. 19 (citing Tr. 341-57 (reflecting three visits to Monarch mental health on Nov. 30, 2015, Dec. 1, 2015, and Feb. 11, 2016)).) Notably, Plaintiff has not challenged the ALJ's analysis of Plaintiff's subjective symptom reporting. (See Docket Entry 13.)

Second, the ALJ's non-production restriction, in and of itself, adequately accounts for Plaintiff's moderate limitation in CPP. See Grant v. Colvin, No. 1:15CV515, 2016 WL 4007606, at *9

10

(M.D.N.C. July 26, 2016) (unpublished) (finding non-production restriction "facially addresse[d] moderate . . . limitation in the claimant's ability to stay on task" (internal quotation marks omitted)), recommendation adopted, slip op. (M.D.N.C. Sept. 21, 2016) (Osteen, Jr., C.J.). Indeed, despite Plaintiff's argument that the ALJ's non-production restriction accounts only for Plaintiff's moderate deficit in pace and does not address his deficits in concentration or persistence (see Docket Entry 13 at 5), a review of recent decisions from the Fourth Circuit addressing non-production restrictions in the context of Mascio bolsters the conclusion that the ALJ's non-production restriction here properly accommodates Plaintiff's moderate limitation in CPP. As another judge of this Court recently reasoned:

> In [Perry v. Berryhill, 765 F. App'x 869 (4th Cir. 2019)], the Fourth Circuit found fault with "the ALJ's reference to a 'non-production oriented work setting,'" as the Fourth Circuit "d[id] not know what the ALJ intended when she used that phrase," making it "difficult, if not impossible, to evaluate whether restricting [the plaintiff] to a 'non-production oriented work setting' properly accounted for [his] well-documented limitations in [CPP]." Perry, 765 F. App'x at 872. In so doing, the Fourth Circuit specifically distinguished its decision in Sizemore v. Berryhill, 878 F.2d 72 (4th Cir. 2017), where it "found that an ALJ had adequately explained a[n RFC] assessment that restricted the claimant, in part, to 'non-production jobs,'" as "the ALJ in Sizemore provided additional context, explaining that the claimant could perform work only in a 'low stress' setting, without any 'fast-paced work' or 'public contact,' to account for moderate limitations in [CPP]," which "descriptors helped to explain the restriction intended by the ALJ, and allowed [the Fourth Circuit] to evaluate whether that restriction

11

>     adequately accounted for the claimant's limitations."
>     Perry, 765 F. App'x at 872 n.1.

Ross v. Berryhill, No. 1:17CV1145, 2019 WL 1430129, at *1 (M.D.N.C. Mar. 29, 2019) (unpublished) (Schroeder, C.J.) (emphasis added); see also Thomas v. Berryhill, 916 F.3d 307, 312 (4th Cir. 2019) (finding that ALJ's preclusion of "work 'requiring a production rate or demand pace'" and "'crisis situations, complex decision making, or constant changes in a routine setting'" did not suffice under facts of that case). As in Ross (and consistent with Sizemore, as construed in Perry), the ALJ here restricted Plaintiff to "a low stress job," which the ALJ further defined as precluding "fast paced production requirements" and "hazardous conditions," along with the further descriptors of "only occasional decision making," "only occasional changes in the work setting," and "occasional[ ] interact[ion] with coworkers, supervisors, and the public" (Tr. 18). Those descriptors "help[ ] to explain the restriction intended by the ALJ, and allow [the Court] to evaluate whether that restriction adequately accounted for [Plaintiff's] limitations," Perry, 765 F. App'x at 872 n.1.

   In light of the foregoing analysis, Plaintiff has failed to demonstrate prejudicial error under Mascio and his sole assignment of error falls short.

### III. CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 12) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 15) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

August 31, 2020